1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11

STEFAN MICHALOPOULOS,

12

Plaintiff,

13

v.

14

UNITED STATES OF AMERICA, *et al.*,

15

Defendants.

16
17
18
19

Case No. 1:24-cv-01169-CDB

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS WITH LEAVE
TO AMEND

(Doc. 30)

ORDER DENYING PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT

(Doc. 33)

**30-DAY DEADLINE**

20    Pending before the Court[1] is the motion of Defendants United States of America and Federal

21 Bureau of Investigation ("FBI") (collectively, "Defendants") to dismiss the complaint of Plaintiff

22 Stefan Michalopoulos ("Plaintiff") (Doc. 1), filed on January 21, 2025.  (Doc. 30).  On March 4,

23 2025, Plaintiff filed a construed opposition to Defendants' motion to dismiss (*see* Docs. 35, 36),

24 and on March 13, 2025, Defendants replied (Doc. 37).  Following review of the parties' filings

25 made in connection with the motion, the Court deemed the motion suitable for disposition without

26 hearing and oral argument and vacated the motion hearing set for April 1, 2025.  (Doc. 38) (citing

27

28    [1] Following all parties' expression of consent to the jurisdiction of a magistrate judge for all further proceedings in this action, including trial and entry of judgment, on December 16, 2024, this action was reassigned to the undersigned pursuant to 28 U.S.C. § 636(c)(1).  (Doc. 20).

Local Rule 230(g)).  For the reasons set forth herein, the Court will grant Defendants' motion to dismiss the complaint and extend to Plaintiff leave to amend the complaint to the extent he can, in good faith, remedy the deficiencies noted herein.

## I.     **Relevant Background**

### A.     **Procedural History**

Plaintiff initiated this action with the filing of a complaint on October 2, 2024.  (Doc. 1).  In his complaint, Plaintiff asserts a single cause of action against Defendants pursuant to the Federal Tort Claims Act ("FTCA").  *See id*. at 20.  Specifically, Plaintiff alleges Defendants engaged in:

> false accusations, government overdramatization and reckless disregard for the truth, negligent tort, retaliation, discrimination, abuse of discretion, civil rights violation, unreasonable search and seizure, emotional distress, personal injury, harassment, due process violation, perjury, invasion of privacy by intrusion, equal protection, grossly disproportionate cruel and unusual treatment and punishment.

*Id*. at 20-21.

On October 22, 2024, Plaintiff filed a document entitled "Important Notice to the Court" in which he reiterated various of the allegations set forth in the complaint and made additional requests for relief, to wit:

> We are seeking legal and court ordered correction to this whole case. A proper court ordered treatment plan using California's Laura's law, and a court order for the FBI to leave him alone from now on. A letter from the FBI saying they will no longer target Stefan. A letter stating that he has been removed from the Terrorist Screening Dataset. A letter stating that he has been removed from the International Terrorist Watchlist. A letter stating that he has been removed from the World Wide Target list for dangerous targets. Stefan was added to all these watchlists by the FBI for constitutionally and legally impermissible reasons. This matter will be discussed in detail during the court hearings.

(Doc. 6 at 5).

Thereafter, Plaintiff made a series of filings, including: (1) a motion for leave to amend and a lodged first amended complaint; (2) a motion for temporary restraining order; (3) a motion for

1    leave to file supplemental pleading; and (4) a further motion for temporary restraining order.[2]

2    (Docs. 10, 11, 12, 15, 16).

3    On December 13, 2024, Defendant the United States of America appeared and filed a joint

4    scheduling report, representing therein that it would seek an order substituting it for Defendant FBI

5    as the only proper party for claims under the FTCA and that it intended to file a motion to dismiss

6    the operative complaint.  (Doc. 17 at 2, 3, 5-7).  In light of that representation, on December 18,

7    2024, the Court ordered the parties to meet and confer and file a joint report proposing a briefing

8    schedule on Defendants' anticipated motion to dismiss.  (Doc. 21).  On December 27, 2024,

9    pursuant to the parties' stipulated agreement (Doc. 25), the Court ordered Defendants to file any

10   motion to dismiss no later than January 21, 2025, Plaintiff to file either an opposition or statement

11   of non-opposition thereto no later than February 4, 2025, and Defendants to file any reply no later

12   than February 21, 2025, and vacated the January 2, 2025, scheduling conference to be reset as

13   appropriate following the Court's resolution of Defendant's anticipated motion to dismiss.  (Doc.

14   27).

15   On December 30, 2024, Plaintiff filed a purported opposition to Defendants' anticipated

16   motion to dismiss (Doc. 28), which the Court disregards as an improper filing as it was

17   preemptively filed before Defendants filed any motion to dismiss.  *See* Local Rule 230(c)

18   ("Opposition, if any, to the granting of the motion ... shall be filed and served no later than fourteen

19   (14) days *after* the motion was filed.") (emphasis added).  Further, notwithstanding Plaintiff filed

20   a request for entry of default against Defendants (Doc. 31), because Defendants timely filed a

21   responsive pleading, they are not in default.  Accordingly, the Court will deny Plaintiff's motion

22   for default judgment (Doc. 33).  *See* (Docs. 8, 9, 13, 14, 17, 30).

23   **B.      The Complaint's Factual Allegations**

24   Plaintiff asserts a claim for damages under the Federal Tort Claims Act.  (Doc. 1).  In his

25   complaint, he alleges that his claims stem from actions taken by investigative officers and other

26   agency officials and employees of the federal government and the FBI "while acting within the

27

28   _____
     [2] The Court will resolve Plaintiff's motions for temporary restraining order (Docs. 12, 16)
     in a separate order.

scope of their employment." *Id.* ¶ 8.  He alleges that since March 2003, he has been under audio
and video surveillance in his home and work and followed at all public places "for life[,]" including
being surveilled of his cell phone, computer, texts, emails, and in person. *Id.* ¶¶ 9, 14.  He alleges
that the FBI is in violation of his civil and constitutional rights based on this "negligent and
discriminatory conduct" and that he was "secretly" sentenced to deprivation of his "whole life"
without the chance to defend himself. *Id.* ¶ 9.  Plaintiff's complaint appears to allege that he was
impermissibly placed on a government "watchlist," *i.e.*, the "FBI's American Domestic 'Terrorist
Screening Dataset'" based on his mental health issues including his belief that "[h]e thinks he is a
Navy SEAL[.]" *Id.* ¶ 12.  He alleges that there is a "loophole" in the system because if he is on
these watchlists, then he is "automatically a National Security Threat" even though there is no
probable cause. *Id.*  He asserts that warrants obtained for this surveillance are facially deficient and
unlawful with false information and that the FBI "covertly administers mind-altering substances"
that impairs his ability to function. *Id.* ¶ 14.

He asserts the "circumstances of this case have deprived [him]" of various constitutional
rights, including the rights to be presumed innocent, to equal protection, to freedom from
government discrimination, privacy, and other claimed rights. *Id.* ¶¶ 18-20.  He asserts that
equitable relief is necessary to stop "this illegal surveillance because the FBI intention is to have
[him] under surveillance 'for life.'" *Id.* ¶ 23.  He alleges that the FBI mandates that he be drugged
in order to minimize and neutralize him as a threat because he "used to work out a lot and enjoy
health and fitness, and kept getting stronger … over the years [and] [] have been seen as a huge
threat than just mentally disabled." *Id.* ¶ 26.

He alleges that in 2019 on the island of St. Croix, the FBI wanted him to leave the island
because it is a small community and for the safety of the people and the FBI administered
testosterone and other substances causing him to overdose for many months, leading to mental and
physical pain. *Id.* ¶ 29.  He alleges that later in November 2019, he ran away to Canada to visit his
brother and was interrogated by various investigative units of the federal government when he
arrived. *Id.*  He further alleges that the Canadian Security and Intelligence Service insisted he was
dangerous without probable cause. *Id.*  Plaintiff's complaint proceeds to repeat several of his

1    allegations including of being misinterpreted as "crazy" because "he thinks he is a Navy SEAL"

2    and of the FBI's surveillance of him.  *See id.* ¶¶ 34-35.

3            In his claim for violation of the FTCA, he asserts that his allegations "constitute negligent

4    and wrongful acts and omissions of agents and employees" of the federal government including

5    "false accusations, … negligent tort, retaliation, discrimination, civil rights violation," and a

6    number of other violations.  *Id.* ¶ 38.  He asserts that the "intentional infliction of … psychological

7    torture and mental suffering" based on "the administration or application of mind-altering

8    substances or other procedures calculated to disrupt profoundly the senses or the personality" are

9    "circumstances where the defendant United States, if a private person, would be liable to the

10   Plaintiff[.]"  *Id.*

11           Plaintiff asserts he has suffered damages and alleges an extensive list of injuries, including

12   physical, mental, emotional, and financial injuries.  *See id.* ¶ 39(a)-(m); *see also id.* ¶¶ 40-46.  For

13   example, Plaintiff alleges he has been tortured by "effects calculated by the FBI to impair [his]

14   brain and body" causing him various physical issues including "extreme bloating and

15   uncontrollable weight gain" and sexual dysfunction, insomnia, and other issues.  *See id.* ¶ 40.  He

16   alleges that since "overdosing in 2019, every day for many years now and until present day, [he

17   has] testicular pain from the FBI administration of these substances containing variations of

18   testosterones."  *Id.* ¶ 43.  He alleges the FBI puts these substances in his food, prescription pills,

19   sprays it on his bed, towels, and other personal toiletries, belongings, and food items and "watches"

20   him shower and "knows" if he is "eating the food, sleeping in [his] bed, [etc.]"  *Id.* ¶ 44.  He alleges

21   that "[a]s a direct result of the actions of the government, [he has] been greatly distressed,

22   humiliated, and embarrassed" and has "sustained intense and severe mental suffering and

23   distress[.]"  *Id.* ¶ 45.  He asserts a cause of action for privacy and the tort of invasion of privacy

24   which "allows [him] to recover damages for [] deprivation of [his] solitude and seclusion and []

25   that [his] private life is publicly given, allowing recovery for the harm resulting to [his] reputation

26   from the publicity" and to recover damages "for the harm to [his] reputation from the position in

27   which [he is] placed" and damages for emotional distress and humiliation.  *Id.* ¶ 46.

28

1    In his prayer for relief, Plaintiff seeks the following: damages in the amount of $500 million

2    dollars; injunctive relief to have him "removed from all domestic and international watchlists … to

3    prevent this surveillance from following [him] domestically and internationally when [he] decide[s]

4    to travel abroad"; to quash and traverse the warrants against him as constitutionally void and for

5    the "fruits of the poisonous tree" evidence to be destroyed "as though [he] was never under

6    surveillance"; and the costs of the action.  *Id.* ¶ 47.  The complaint is signed and dated October 2,

7    2024.  *Id.* at 25.  Plaintiff attaches to the complaint a form titled "Claim for Damage, Injury, or

8    Death" purporting to bear his signature and a letter from the U.S. Department of Justice ("DOJ")

9    dated September 9, 2024, indicating that the FBI has denied his claim for personal injury for a sum

10   certain amount of $500 million dollars.  *Id.* at 26-28.

11   **II.    <u>Governing Authority</u>**

12   A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss

13   a plaintiff's complaint for failing "to state a claim upon which relief can be granted."  Fed. R. Civ.

14   P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  *N. Star*

15   *Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371,

16   374 (8th Cir. 1981)).  A complaint may be dismissed as a matter of law either for lack of a

17   cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

18   *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean*

19   *Witter Reynolds, Inc*., 749 F.2d 530, 533-34 (9th Cir. 1984)).

20   To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient

21   factual matter to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662,

22   678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the

23   claim showing that the pleader is entitled to relief).  A complaint satisfies the plausibility

24   requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the

25   defendant is liable for the misconduct alleged."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

26   (2007).

27   When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court

28   must accept as true all allegations put forth in the complaint and construe all facts and inferences

in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010). The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted). The Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)). Nor does the court "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Western Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) (while factual allegations are accepted as true, legal conclusions are not).

Finally, courts must construe pro se pleadings liberally and hold such pleadings to a less stringent standard than those drafted by attorneys. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *see Hughes v. Rowe*, 449 U.S. 5, 9 (1980) ("It is settled law that the allegations of [a pro se litigant's complaint] 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers . . .'" (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972))). A court should dismiss a pro se complaint without leave to amend only if "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

**III.    Parties' Contentions**

Defendants move to dismiss Plaintiff's complaint because Plaintiff fails to meet his burden of establishing subject matter jurisdiction and fails to plausibly allege facts necessary to state any claims against them. (Doc. 30 at 1). Defendants contend that because the United States is the only proper defendant for claims under the FTCA, and sovereign immunity bars any claims directly against the FBI, the Court should dismiss the FBI as a defendant. (Doc. 31-1 at 4). Defendant contends that Plaintiff's conclusory allegations that he has been under surveillance for 20 years and subjected to mind-altering substances are unsupported by well-pleaded facts and do not state any

1   viable claims. *Id.* at 6. Defendants argue the United States cannot be sued under the FTCA for

2   Plaintiff's constitutional claims because it has not waived sovereign immunity, that Plaintiff's

3   purported perjury claim cannot proceed under the FTCA, and that his claim for a violation of the

4   Administrative Procedure Act ("APA") based on allegations that he was placed on "Terrorist and

5   Dangerous Target Watchlists" and under "surveillance for life" is unexhausted and fails to identify

6   any agency action that could serve as predicates to state an APA claim. *Id.* at 6-7. Defendants

7   further contend that to the extent Plaintiff seeks to assert claims for invasion of privacy, retaliation,

8   discrimination, and harassment, he fails to plausibly allege sufficient facts to state those claims. *Id.*

9   at 8-9. Lastly, Defendants contend that leave to amend is not warranted and should be denied

10  because Plaintiff cannot cure the defects in his complaint. *Id.* at 9-10.

11      In what the Court construes as Plaintiff's untimely opposition to Defendants' motion (*see*

12  Docs. 25, 35), Plaintiff contends he "can no longer proceed with this case[,]" that he is putting a

13  "hold on this case until further notice[,]" and that he "will continue this lawsuit another time" based

14  on allegations that he has been tortured and retaliated against by the FBI.[3]  (Doc. 35 at 1-2).

15  Plaintiff's opposition largely is incoherent and rife with conclusory allegations that do not address

16  the merits of Defendants' motion, including assertions of "attempted murder," "chemical warfare"

17  against him, "[f]alse accusations, [d]iscrimination, corruption, conspiracy," and invocation of

18  various international treaties and conventions, all without sufficient factual support. *See id* at 3-5.

19  For example, Plaintiff alleges that the FBI is looking for trouble with him in part because he "has

20  turrets syndrome." *Id.* at 4-5. He repeatedly alleges that "[o]ur competing interests in this whole

21  case is 'America[']s sense of justice'" where the FBI "is calling [his] turrets syndrome criminal"

22

---

23      [3] Plaintiff's assertion that he is putting "a hold on this case until further notice" is improper
    as he has not moved to stay proceedings nor made a showing that a stay is warranted. "[T]he power
24  to stay proceedings is incidental to the power inherent in every court to control the disposition of
    the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."
25  *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936); *Lockyer v. Mirant Corp*, 398 F.3d 1098, 1109 (9th
    Cir. 2005); *accord CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Based on the Court's
26  assessment of the factors under *CMAX, Inc.* whether to grant a stay, the Court does not find a stay
27  warranted as Plaintiff has failed to show any hardship or inequity that he may suffer in being
    required to go forward or that the orderly course of justice in managing this litigation would benefit
28  from a stay. *See CMAX, Inc.*, 300 F.2d at 268 (citing *Landis*, 299 U.S. at 254-55).

and that "[e]very study in the history of turrets syndrome will tell you that [syndrome] is in fact not a behavioral disorder. LOL. Fight statistics mother [f**ker]." *See id.* at 4-6. He alleges that his clothing "is a remote controlled device being used to release chemical agents … onto [his] skin that will kill [him]" and that he needs injunctive relief immediately. *Id.* at 9. He asserts that he is suing the FBI for disregarding his torture complaint as "[t]hey cause harm" to him instead of helping him and that in August 2022, he tried complaining countless times and "got disregarded." *Id.* at 10. Plaintiff also asserts numerous allegations and accusations of the undersigned's handling of this litigation. For example, Plaintiff asserts that he will "appeal this case to the ninth circuit if the judge intentionally unconstitutionally dismisses [his] case" and tell "everybody" what the FBI and judge did. *Id.* at 14. He asserts that the undersigned "has more than ignored [Plaintiff's] motions for TRO and Ex Parte hearings requests" and "completely disregarded [his] perilous conditions, danger of life and death." *Id.* at 20. He alleges that the undersigned is "[c]learly and obviously biased in this whole case" as "a DOJ lawyer for many years" and "must recuse his position in this matter[.]"[4] *Id.* at 21. In a document entitled "Letter to the Clerk[']s Office" attached to the end of his construed opposition, Plaintiff reaffirms that he is "putting this case and lawsuit on hold until further notice" as "these torture laws were made to protect [him] and save [his] life" but "they are getting [him] killed instead." *Id.* at 45.

In reply, Defendants assert that Plaintiff's "recent filing indicates that he is abandoning his lawsuit" which "provides another basis for dismissal of the action." (Doc. 37 at 1). Defendants contend that Plaintiff makes no attempt to dispute that the United States is the only proper defendant for his claims under the FTCA and that any claims against the FBI as an agency should be

---

[4] The Court takes no action on Plaintiff's demand for recusal of the undersigned because he has neither filed a properly noticed recusal motion nor complied with 28 U.S.C. § 144, which requires that a recusal motion be supported by "a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party[.]" *See* 28 U.S.C. § 144; *United States v. Sibla*, 624 F.2d 864, 867-68 (9th Cir. 1980) (noting the requirement for the filing of a proper motion under either § 144 or § 455); *e.g., United States v. Scholl*, 166 F.3d 964, 977 (9th Cir. 1999) (holding that judge sought to be recused was not required to refer the recusal motion to another judge because "the § 144 affidavit was neither timely nor sufficient to trigger reassignment.") (citing *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1388 (9th Cir. 1998) (holding that only after determining the legal sufficiency of a § 144 affidavit is a judge obligated to reassign decision on merits to another judge)).

1    dismissed.  *Id.* at 2.  Defendants contend that Plaintiff's opposition fails to meet his burden of

2    proving subject matter jurisdiction over any of his claims alleging torture and a conspiracy to harm

3    him and of proving a waiver of sovereign immunity for any claims based on constitutional

4    violations.  *Id.* at 2-3.  Defendants contend that Plaintiff makes no mention of compliance with the

5    administrative review process to pursue a claim under the APA.  *Id.* at 3.  Defendants further argue

6    Plaintiff's request to put his lawsuit on hold justifies dismissal of the action.  *Id.* at 4.

7    **IV.    <u>Discussion</u>**

8            Plaintiff has failed to state any cognizable claims in both the operative complaint and the

9    lodged, first amended complaint.  The Court analyzes the claims asserted in Plaintiff's complaint

10   as set forth below before addressing Plaintiff's motions for leave to amend and to file a

11   supplemental pleading and lodged first amended complaint.

12           **A.    Lack of Subject Matter Jurisdiction**

13                   1.    *Governing Authority*

14           A complaint may be dismissed for lack of subject matter jurisdiction pursuant to Federal

15   Rule of Civil Procedure 12(b)(1).  Fed. R. Civ. P. 12(b)(1).  Under Rule 12(b)(1), a defendant may

16   challenge the plaintiff's jurisdictional allegations by asserting a "facial" attack, which "accepts the

17   truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal

18   jurisdiction.'"  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for*

19   *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).  The court "resolves a facial attack as it

20   would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and

21   drawing all reasonable inferences in the plaintiff's favor, the court determines whether the

22   allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Id.* (citing *Pride v.*

23   *Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).  The Court should not "assume the truth of legal

24   conclusions merely because they are cast in the form of factual allegations."  *W. Mining Council v.*

25   *Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

26           Here, Plaintiff's complaint asserts the Court has subject matter jurisdiction over his claims

27   brought against the federal government pursuant to federal question jurisdiction, specifically under

28   the FTCA and 28 U.S.C. 1346(b)(1) for money damages.  (Doc. 1 ¶ 4).  "A plaintiff properly

1    invokes [federal question jurisdiction under 28 U.S.C. § 1331] when she pleads a colorable claim

2    'arising under' the Constitution or laws of the United States." *Arbaugh v. Y&H Corp.*, 546 U.S.

3    500, 513 (2006).  However, a "claim invoking federal-question jurisdiction … may be dismissed

4    for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is 'immaterial and made solely

5    for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Id.* at 413 n.

6    10 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)); *Neitzke v. Williams*, 490 U.S. 319, 327 n.6

7    (1989) ("A patently insubstantial complaint may be dismissed ... for want of subject-matter

8    jurisdiction under [Rule] 12(b)(1)."); *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) ("[T]he

9    federal courts are without power to entertain claims otherwise within their jurisdiction if they are

10    so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously

11    frivolous, plainly unsubstantial, or no longer open to discussion[.]") (citations omitted).

12                    2.    *Analysis*

13            Plaintiff's conclusory allegations suggesting that he has been tortured and surveilled by the

14    FBI since 2003 are without sufficient factual detail and are otherwise "wholly insubstantial and

15    frivolous" such that the Court does not find a basis to exercise subject matter jurisdiction over this

16    action.  *See Arbaugh*, 546 U.S. at 513 n. 10; *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A]

17    finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational

18    or the wholly incredible[.]"); *O'Brien v. U.S. Dep't of Justice*, 927 F. Supp. 382, 384-85 (D. Ariz.

19    1995) ("Plaintiff's allegations [that defendants, including the U.S. Department of Justice, installed

20    electronic equipment on plaintiff's residential telephone lines and contaminated her with "vile

21    germs"] are so bizarre and delusional that they are wholly insubstantial and cannot invoke this

22    Court's jurisdiction."), *aff'd*, 76 F.3d 387 (9th Cir. 1996) (unpub.); *Bivolarevic v. U.S. CIA*, No. C

23    09-4620 SBA, 2010 WL 890147, at *2 (N.D. Cal. Mar. 8, 2010) ("Plaintiff alleges that the CIA has

24    subjected her to 'voice to skull technology' which it is using as a 'mind control weapon.' She has

25    demanded that the CIA cease 'this constant direct speaking to [her] mind, and reading of [her]

26    mind.' These are precisely the type of frivolous claims that are subject to dismissal for lack of

27    jurisdiction.") (citations omitted)); *Kolev v. Davidi*, No. CV 08-5324-DOC(RC), 2008 WL

28    4447561, at *2 (C.D. Cal. Sept. 29, 2008) ("[F]ederal courts have repeatedly dismissed claims

1    brought by citizens who suspect federal agencies have engaged in unlawful surveillance or

2    wiretapping activities based upon nothing but a personal belief as fantastic or delusional.")

3    (citations and internal quotation marks omitted)); accord, *McGinnis v. Freudenthal*, 426 Fed. Appx.

4    625, 628 (10th Cir. 2011) ("Mr. McGinnis' claims of electromagnetic torture [by government and

5    prison officials] are delusional and unsupported by any factual basis. The district court did not

6    abuse its discretion in dismissing these claims as frivolous."); *Newby v. Obama*, 681 F. Supp. 2d

7    53, 56 (D. D.C. 2010) ("[Plaintiff's] claims relating to alleged government surveillance and

8    harassment are of the sort of 'bizarre conspiracy theory' that warrant dismissal under Rule 12(b)(1).

9    For this reason, the Court concludes that the complaint is frivolous and that it does not have

10   jurisdiction over plaintiff's claims."); *Curran v. Holder*, 626 F. Supp. 2d 30, 33 (D. D.C.

11   2009) (same).

12        Like the cases cited above, Plaintiff's complaint is based upon assertions and unverifiable,

13   speculative, and conclusory allegations that he has been the target of government surveillance and

14   torture.  Indeed, his construed opposition to the motion does not bolster his case, as it confirms the

15   Court's finding that his claims are based upon matters which are "so attenuated and unsubstantial

16   as to be absolutely devoid of merit," *Neitzke*, 490 U.S. at 327, n. 6, such that the Court lacks subject

17   matter jurisdiction over his complaint, *Lavine*, 415 U.S. at 536-37.  The Court therefore finds

18   dismissal of the complaint appropriate for lack of subject matter jurisdiction.

19              3.    *Sovereign Immunity*

20        Separately, the Court finds Plaintiff's assertion of multiple constitutional violations against

21   the United States and the FBI are barred under the doctrine of sovereign immunity.  "The doctrine

22   of sovereign immunity applies to federal agencies and to federal employees acting within their

23   official capacities." *Hodge v. Dalton*, 107 F.3d 705, 707 (9th Cir. 1997); *Balser v. Dep't of Justice,*

24   *Office of U.S. Trustee*, 327 F.3d 903, 907 (9th Cir. 2003) ("The United States, as a sovereign, is

25   immune from suit unless it has waived its immunity.").  "Absent a waiver, sovereign immunity

26   shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475

27   (1993); *see Rivera v. United States*, 924 F.2d 948, 951 (9th Cir. 1991) ("The courts lack subject

28   matter jurisdiction to hear constitutional damage claims against the United States, because the

1    United States has not waived sovereign immunity with respect to such claims.").   Therefore,

2    sovereign immunity bars Plaintiff's action insofar as the complaint asserts constitutional violations

3    against the federal government unless a waiver of immunity exists.  *Baker v. United States*, 817

4    F.2d 560, 562 (9th Cir. 1987) ("A party bringing a cause of action against the federal government

5    bears the burden of showing an unequivocal waiver of immunity."), *cert. denied*, 487 U.S. 1204

6    (1988).

7         Here, because Plaintiff's complaint asserts constitutional violations against only the federal

8    government and fails to allege any actions of wrongdoing by any individual agents or any

9    individuals acting under of state law, the Court does not find a waiver of sovereign immunity

10   pursuant to either *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), which enables a

11   plaintiff to sue individual federal officers for damages resulting from certain constitutional

12   violations, or 42 U.S.C. § 1983 identified such as to allow Plaintiff's constitutional claims to

13   survive.  *See Gibson v. United States*, 781 F.2d 1334, 1343 (9th Cir. 1986) ("[f]ederal officers

14   acting under federal authority are immune from suit under § 1983 unless the state or its agents

15   significantly participated in the challenged activity."); *Chatman v. U.S. Dep't of the Navy*, 846 Fed.

16   Appx. 543, 543-44 (9th Cir. 2021) ("federal government actors cannot be liable under § 1983[.]").

17   Because Plaintiff has not alleged any valid waiver of immunity exists, and none is apparent,

18   Plaintiff's constitutional claims against the federal government must be dismissed for lack of

19   subject matter jurisdiction.

20        **B.    Failure to State a Claim**

21        Even if subject matter jurisdiction exists, liberally construing Plaintiff's pro se complaint,

22   dismissal of the complaint nonetheless is warranted as Plaintiff fails to adequately plead any

23   cognizable claims.  The Court addresses Plaintiff's claims below.

24             1.    *FTCA Claim*

25                  a.    Governing Authority

26        "It is elementary that '[t]he United States, as sovereign, is immune from suit save as it

27   consents to be sued…, and the terms of its consent to be sued in any court define the court's

28   jurisdiction to entertain the suit.'"  *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting

*United States v. Sherwood*, 312 U.S. 584, 586 (1941)).  "The FTCA waives sovereign immunity and grants federal district courts exclusive jurisdiction over claims against the United States for 'personal injury or death caused by the negligent or wrongful act or omission of a federal employee acting within the scope of his office or employment.'" *Leuthauser v. United States*, 71 F.4th 1189, 1193 (9th Cir. 2023) (quoting *Millbrook v. United States*, 569 U.S. 50, 52 (2013)); *Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015) ("The United States has waived its sovereign immunity with regard to tort liability under the Federal Tort Claims Act 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'") (quoting 28 U.S.C. § 1346(b)(1)).  The FTCA's "waiver of sovereign immunity ... is subject to an exception for certain intentional torts over which the government reclaims immunity." *Leithauser*, 71 F.4th at 1193 (citing 28 U.S.C. § 2680(h)). However, the FTCA "contains an exception to this exception—a re-waiver of sovereign immunity." *Id.* (citing *Foster v. United States*, 522 F.3d 1071, 1074 (9th Cir. 2008)).  This "so-called 'law enforcement proviso' allows suits against the United States for 'any claim arising ... out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution' by 'investigative or law enforcement officers of the United States Government.'" *Id.* (quoting 28 U.S.C. § 2680(h)). The FTCA "defines an investigative or law enforcement officer as 'any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.'" *Id.*

Preliminarily, "federal district courts have jurisdiction to hear a plaintiff's tort claim under the FTCA only after the plaintiff has exhausted the claim by submitting it to the appropriate federal agency first." *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1140 (9th Cir. 2013) (citing *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006)).  "A claim is deemed presented for purposes of [the FTCA] when a party files '(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim.'" *Castro v. United States*, No. 23-15841, 2024 WL 2892438, at *1 (9th Cir. June 10, 2024) (quoting *Warren v. U.S. Dep't of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 780 (9th Cir. 1984) (en banc)); *D.L. by & through Junio v. Vassilev*, 858 F.3d 1242, 1244 (9th Cir. 2017) ("[a] claim is deemed exhausted

1   once the relevant agency finally denies it in writing, or if the agency fails to make a final disposition

2   of the claim within six months of the claim's filing.") (citing 28 U.S.C. § 2675(a)).

3                                    b.    Analysis

4       The Court finds Plaintiff properly has exhausted his FTCA claim, as reflected in his claim

5   form and a letter from the FBI denying his personal injury claim, both of which acknowledge

6   Plaintiff's $500 million dollar demand.  *See* (Doc. 1 at 26-28).  Indeed, Defendants do not purport

7   to challenge FTCA exhaustion.  *See* (Docs. 30, 30-1, 37); *Tritz*, 721 F.3d at 1140.

8       Plaintiff's FTCA claim seeks relief based on Defendants' negligent and wrongful acts and

9   omissions of federal government agents and employees based on numerous harms, including "false

10  accusations, … negligent tort, retaliation, discrimination, abuse of discretion, civil rights violation,

11  unreasonable search and seizure, emotional distress, personal injury, … due process violation, …

12  [and] equal protection[.]"  (Doc. 1 ¶ 38).

13      As set forth above, to the extent Plaintiff asserts constitutional tort violations under the

14  FTCA, those claims are barred under the doctrine of sovereign immunity as the FTCA does not

15  provide a waiver for such claims.  *See Meyer*, 510 U.S. at 477-78 ("[T]he United States simply has

16  not rendered itself liable under [the FTCA] for constitutional tort claims."); *Jachetta v. United*

17  *States*, 653 F.3d 898, 904 (9th Cir. 2011) ("[T]he FTCA does not provide a waiver of sovereign

18  immunity for ...claims" alleging deprivations of "federal constitutional rights"); *Roundtree v.*

19  *United States*, 40 F.3d 1036, 1038 (9th Cir. 1994) ("[I]t is pellucid that the United States cannot be

20  sued [under the FTCA] on the theory that there has been a violation of Roundtree's constitutional

21  rights."); *Rivera v. U.S.*, 924 F.2d 948, 951 (9th Cir. 1991) (same).  Therefore, Plaintiff's FTCA

22  claim seeking redress for his alleged constitutional violations are barred and must be dismissed for

23  lack of subject matter jurisdiction.  Additionally, the FBI is not a proper defendant in an FTCA

24  claim as the FTCA only allows claims against the United States, and "an agency itself cannot be

25  sued under the FTCA."  *F.D.I.C. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998) (citing *Shelton v. U.S.*

26  *Customs Serv.*, 565 F.2d 1140, 1141 (9th Cir. 1977)).

27      Plaintiff's remaining allegations supporting his FTCA claim fail to state a claim.  As noted

28  above, his allegations that the federal government subjected him to "a form of psychological torture

                                    15

1    and mental suffering" based on the "administration or application of mind-altering substances"

2    since March 2003 and the "unlawful audio and video surveillance" against him "for life" are devoid

3    of sufficient factual support or rationale such that these allegations are frivolous and fail to state a

4    claim under the FTCA.  Notwithstanding the "law enforcement proviso" pursuant to which the

5    United States "re-waives" sovereign immunity for certain types of torts (*Leuthauser*, 71 F.4th at

6    1193) arguably similar to some of those alleged by Plaintiff, he has not alleged coherent

7    circumstances, events, or actions of the federal government that establish tort liability under the

8    FTCA "where the United States, if a private person, would be liable to [Plaintiff] in accordance

9    with the law of the place where the act or omission occurred."  *Chadd*, 794 F.3d at 1108.  Indeed,

10    his other bases of relief alleged in his FTCA claim, *i.e.*, "government overdramatization and

11    reckless disregard for the truth" and "perjury" (Doc. 1 ¶ 38) do not appear to constitute cognizable

12    state law theories of liability.  *See Lambert v. Carneghi*, 158 Cal. App. 4th 1120, 1143 n.9 (2008)

13    ("There is no civil cause of action for perjury; it is a criminal wrong only.") (citation omitted).

14           Thus, Plaintiff has failed to state a claim under the FTCA.

15                 2.    *APA Claim*

16           Under the APA, "[a] person suffering legal wrong because of agency action, or adversely

17    affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial

18    review thereof."  5 U.S.C. § 702.  However, "the APA does not afford an implied grant of subject-

19    matter jurisdiction permitting federal judicial review of agency action."  *See Califano v. Sanders*,

20    430 U.S. 99, 107 (1977).  "Agency action is subject to judicial review only when it is either: (1)

21    made reviewable by statute; or (2) a 'final' action 'for which there is no other adequate remedy in

22    a court.'"  *Cabaccang v. U.S. Citizenship and Immigration Servs.*, 627 F.3d 1313, 1315 (9th Cir.

23    2010) (citing 5 U.S.C. § 704).

24           Plaintiff asserts an APA claim alleging only that his placement on "Terrorist and Dangerous

25    Target Watchlists" and Defendants' "surveillance [of him] for life" constitutes a "suffering legal

26    wrong because of agency action[.]"  (Doc. 1 ¶ 24).  As Defendants correctly argue, Plaintiff's APA

27    claim is defective as he has not pled any compliance with the administrative review process under

28    the APA.  "The APA requires that plaintiffs exhaust available administrative remedies before

1    bringing grievances to federal court[.]" *Great Old Broads for Wilderness v. Kimbell*, 709 F.3d 836,

2    847 (9th Cir. 2013) (citing 5 U.S.C. § 704); *see Cabaccang*, 627 F.3d at 1316 ("Where relief is

3    available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue

4    of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature

5    and must be dismissed.") (citing *Reiter v. Cooper*, 507 U.S. 258, 269 (1993)).

6           To the contrary, Plaintiff's pleadings pertaining to Defendants' alleged violation of the APA

7    in connection with their placement of Plaintiff on unidentified "Terrorist and Dangerous Target

8    Watchlists" contradict any implied allegation that he properly exhausted the claim prior to bringing

9    suit.  Specifically, his claim form to the FBI seeking $500 million dollars alleges only that the FBI

10   wrongfully surveilled and conducted video surveillance of him, not that the agency improperly

11   placed Plaintiff on any watchlist.  Thus, because Plaintiff's alleged claim to the FBI is not

12   "sufficiently similar" to the purported APA claim here premised on his alleged improper placement

13   on a watchlist, the FBI was not on notice of the watchlist claim and did not have the opportunity to

14   consider and resolve it, as required for proper exhaustion.  *See Native Ecosystems v. Dombeack*,

15   304 F.3d 886, 899 (9th Cir.2002) (exhaustion is accomplished only if the plaintiff's appeal "taken

16   as a whole, provided sufficient notice to the [agency] to afford it the opportunity to rectify the

17   violations that the plaintiffs alleged.").

18          Even had Plaintiff exhausted his APA claim, his vague and conclusory allegations

19   concerning the Defendants' placement of him on a supposed watchlist lack sufficient factual

20   allegations from which any inference could be drawn that he has stated a cognizable claim to relief.

21   *E.g.*, *Dahlstrom v. United States*, No. C24-641-RSM, 2025 WL 1149634, at *5 (W.D. Wash. Apr.

22   18, 2025) (dismissing the plaintiff's APA claim based on allegations he "believes he is on a

23   'watchlist' and 'targeted' because he of his status as a Roman Catholic, for his work in immigration

24   rights, and for prior complaints to DHS [citation omitted].  However, other than the two alleged

25   incidents in his complaint of once being sniffed by a dog and undergoing a single pat-down,

26   Plaintiff presents no other related facts from which this Court can possibly deduce that he is on any

27   sort of government 'watchlist.'").

28          Therefore, Plaintiff has failed to state a claim under the APA.

17

1          3.      *State Law Claim for Invasion of Privacy*

2          Plaintiff appears to assert a state law claim of invasion of privacy claim based on his

3   allegations that "allows [him] to recover damages for [] deprivation of [his] solitude and seclusion

4   and [] that [his] private life is publicly given, …for the harm resulting to [his] reputation from the

5   publicity[,] … for the harm to [his] reputation from the position in which [he is] placed" and

6   damages for emotional distress and humiliation. (Doc. 1 ¶ 46).

7          In California, there are two types of claims for invasion of privacy: "(1) public disclosure

8   of private facts, and (2) intrusion into private places, conversations or other matters." *Shulman v.*

9   *Group W Productions, Inc*., 18 Cal. 4th 200, 214 (1998) (citations omitted). To state a claim for

10  public disclosure of private facts, a plaintiff must allege the public disclosure of a private fact which

11  would be offensive and objectionable to the reasonable person and which is not of legitimate public

12  concern. *Id.* (citations omitted). The elements of intrusion are "intrusion into a private place,

13  conversation or matter … in a manner highly offensive to a reasonable person." *Id.* at 231.

14         Liberally construed, Plaintiff's complaint fails to state a claim for invasion of privacy. His

15  claim based on the sole allegation that he is deprived of his solitude and seclusion and that his

16  private life is publicly given does not articulate any public disclosure of any private facts nor does

17  it show an intrusion into any private place, conversation, or defined matter of Plaintiff "in a manner

18  highly offensive to the reasonable person." *Shulman*, 18 Cal. 4th at 214. Thus, Plaintiff fails to

19  state a claim for invasion of privacy.

20         Additionally, dismissal of Plaintiff's state law claims is warranted given the Court's lack of

21  subject matter jurisdiction over his non-cognizable federal claims. "When a district court 'has

22  dismissed all claims over which it has original jurisdiction,' it 'may decline to exercise

23  supplemental jurisdiction' over remaining state law claims." *Pell v. Nuñez*, 99 F.4th 1128, 1135

24  (9th Cir. 2024) (quoting 28 U.S.C. § 1367(a)). Indeed, the Court generally "should decline the

25  exercise of jurisdiction" if "the federal-law claims have dropped out of the lawsuit in its early stages

26  and only state-law claims remain." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)

27  (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966)); *see id*. at 350 n.7 ("in

28  the usual case in which all federal-law claims are eliminated before trial, the balance of factors to

1    be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness,

2    and comity—will point toward declining to exercise jurisdiction over the remaining state-law

3    claims.").

4        **C.    Leave to Amend**

5        Rule 15 provides that "leave [to amend] shall be freely given when justice so requires."

6    Fed. R. Civ. P. 15(2).  However, district courts are only required to grant leave to amend if a

7    complaint can be saved.  *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000).  When a complaint

8    cannot be cured by additional facts, leave to amend need not be provided.  *Doe v. United States*, 58

9    F.3d 494, 397 (9th Cir. 1995).

10       As set forth above, Plaintiff's complaint fails to state any claims as a matter of law and is

11   subject to dismissal.  However, because Plaintiff may be able to cure the identified deficiencies

12   through additional factual allegations, the Court finds Plaintiff should be granted leave to amend.

13   *Lopez*, 203 F.3d at 1129.  Accordingly, Plaintiff's motions for leave to file an amended complaint

14   (Docs. 10, 15) will be granted.  However, upon review of the lodged first amended complaint (Doc.

15   11), the Court finds that proposed pleading deficient for the same reasons as identified in this order.

16   Thus, Plaintiff will be directed to file a renewed first amended complaint compliant with this order.

17   Insofar as Plaintiff no longer seeks to pursue this action based on his assertion that he can no longer

18   proceed with this case, he may instead file a notice of voluntary dismissal pursuant to Federal Rule

19   of Civil Procedure 41(a)(1)(A)(i) as further detailed below.

20       If Plaintiff wishes to file a first amended complaint ("FAC"), any such amended complaint

21   should be brief (Fed. R. Civ. P. 8(a)) but it must state what each named defendant did that led to

22   the deprivation of Plaintiff's rights (*Iqbal*, 556 U.S. at 678-79).  Although accepted as true, the

23   "[f]actual allegation must be [sufficient] to raise a right to relief above the speculative level[.]"

24   *Twombly*, 550 U.S. at 555 (citations omitted).   Additionally, Plaintiff may not change the nature

25   of this suit by adding new, unrelated claims in his FAC.  *George v. Smith*, 507 F.3d 605, 607 (7th

26   Cir. 2007) (explaining no "buckshot" complaints permitted).

27       Finally, Plaintiff is advised that an amended complaint supersedes the original complaint.

28   *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012).  If Plaintiff elects to proceed with this

action by filing a FAC, the Court cannot refer to a prior pleading in order to make an amended complaint complete. *See* Local Rule 220. The **FAC must be complete in itself without reference to the prior or superseded pleading**. Once the FAC is filed, the original pleading no longer serves any function in the case. Thus, in the FAC, **Plaintiff must re-plead all elements of his claims, including all relevant facts, even the ones not addressed by this order**.

**V.     Conclusion and Order**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for default judgment (Doc. 33) is DENIED;

2.  Defendants United States of America and Federal Bureau of Investigation's motion to dismiss (Doc. 30) is GRANTED;

3.  Defendant Federal Bureau of Investigation is DISMISSED from this action as an immune and improper defendant under the Federal Tort Claims Act;

4.  Plaintiff's complaint (Doc. 1) is DISMISSED;

5.  Plaintiff's motions for leave to file an amended complaint (Docs. 10, 15) are GRANTED;

6.  Plaintiff SHALL FILE **within 30 days** from the date of service of this order either:

    a.  A renewed first amended complaint that remedies the deficiencies identified in this order; or

    b.  In the alternative, notice of voluntary dismissal. Fed. R. Civ. P. 41(a)(1)(A)(i).

**Any failure by Plaintiff to comply with this order will result in the dismissal of this action with prejudice for failure to state a claim upon which relief may be granted**.

IT IS SO ORDERED.

Dated:   **October 14, 2025**        _____

                                                    UNITED STATES MAGISTRATE JUDGE