UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEFAN MICHALOPOULOS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants. | Case No. 1:24-cv-01169-CDB<br><br>ORDER DENYING PLAINTIFF'S MOTIONS FOR TEMPORARY RESTRAINING ORDER<br><br>(Docs. 12, 16) |

Pending before the Court[1] are the motions of Plaintiff Stefan Michalopoulos ("Plaintiff") for temporary restraining order, filed on November 19, 2024 (Doc. 12) and December 3, 2024 (Doc. 16)[2], against Defendants United States of America and Federal Bureau of Investigation ("FBI") (collectively, "Defendants"). For the reasons set forth herein, the Court will deny Plaintiff's motions for temporary restraining order.

///

///

///

---

[1] Following all parties' expression of consent to the jurisdiction of a magistrate judge for all further proceedings in this action, including trial and entry of judgment, on December 16, 2024, this action was reassigned to the undersigned pursuant to 28 U.S.C. § 636(c)(1).  (Doc. 20).

[2] Plaintiff's subsequent motion for temporary restraining order (Doc. 16) is identical to his first filed motion for temporary restraining order.

**I.      Relevant Background**

    **A.      Procedural History**

Plaintiff initiated this action with the filing of a complaint on October 2, 2024. (Doc. 1). In his complaint, Plaintiff asserts a single cause of action against Defendants pursuant to the Federal Tort Claims Act ("FTCA"). *See id*. at 20. Specifically, Plaintiff alleges Defendants engaged in:

> false accusations, government overdramatization and reckless disregard for the truth, negligent tort, retaliation, discrimination, abuse of discretion, civil rights violation, unreasonable search and seizure, emotional distress, personal injury, harassment, due process violation, perjury, invasion of privacy by intrusion, equal protection, grossly disproportionate cruel and unusual treatment and punishment.

*Id*. at 20-21.

On October 22, 2024, Plaintiff filed a document entitled "Important Notice to the Court" in which he reiterated various of the allegations set forth in the complaint and made additional requests for relief, to wit:

> We are seeking legal and court ordered correction to this whole case. A proper court ordered treatment plan using California's Laura's law, and a court order for the FBI to leave him alone from now on. A letter from the FBI saying they will no longer target Stefan. A letter stating that he has been removed from the Terrorist Screening Dataset. A letter stating that he has been removed from the International Terrorist Watchlist. A letter stating that he has been removed from the World Wide Target list for dangerous targets. Stefan was added to all these watchlists by the FBI for constitutionally and legally impermissible reasons. This matter will be discussed in detail during the court hearings.

(Doc. 6 at 5).

Thereafter, Plaintiff made a series of filings, including (1) a motion for leave to amend and lodged first amended complaint; (2) a motion for leave to file supplemental pleading; (3) the pending motion for temporary restraining order; and (4) an identical motion for temporary restraining order.[3] (Docs. 10, 11, 12, 15, 16).

On December 13, 2024, Defendant the United States of America appeared and filed a joint scheduling report, representing therein that it would seek an order substituting it for Defendant FBI

---

[3] The undersigned addressed Plaintiff's motions for leave to file an amended complaint (Docs. 10, 11, 15) in a separate order.

as the only proper party for claims under the FTCA and that it intended to file a motion to dismiss the operative complaint. (Doc. 17 at 2, 3, 5-7). In light of that representation, on December 18, 2024, the Court ordered the parties to meet and confer and file a joint report proposing a briefing schedule on Defendants' anticipated motion to dismiss. (Doc. 21). On December 27, 2024, pursuant to the parties' stipulated agreement (Doc. 25), the Court ordered Defendants to file any motion to dismiss no later than January 21, 2025, Plaintiff to file either an opposition or statement of non-opposition thereto no later than February 4, 2025, and Defendants to file any reply no later than February 21, 2025, and vacated the January 2, 2025, scheduling conference to be reset as appropriate following the Court's resolution of Defendant's anticipated motion to dismiss. (Doc. 27).

On December 30, 2024, Plaintiff filed a purported opposition to Defendants' anticipated motion to dismiss (Doc. 28), which the Court disregarded as an improper filing as it was preemptively filed before Defendants filed any motion to dismiss. *See* Local Rule 230(c) ("Opposition, if any, to the granting of the motion ... shall be filed and served no later than fourteen (14) days *after* the motion was filed.") (emphasis added). Further, notwithstanding Plaintiff filed a request for entry of default against Defendants (Doc. 31), because Defendants timely filed a responsive pleading, they are not in default. *See* (Docs. 8, 9, 13, 14, 17, 30).

On January 21, 2025, Defendants filed a motion to dismiss the complaint. (Doc. 30). On March 4, 2025, Plaintiff filed a construed opposition to Defendants' motion to dismiss (*see* Docs. 35, 36), and on March 13, 2025, Defendants replied (Doc. 37). On October 14, 2025, the Court granted Defendants' motion to dismiss with leave to amend. (Doc. 39). Therein, the Court separately denied Plaintiff's motion for default judgment. *Id.* (citing Doc. 33).

### B.    Factual Background of the Complaint

Plaintiff asserts a claim for damages under the Federal Tort Claims Act. (Doc. 1). In his complaint, he alleges that his claims stem from actions taken by investigative officers and other agency officials and employees of the federal government and the FBI "while acting within the scope of their employment." *Id.* ¶ 8. He alleges that since March 2003, he has been under audio and video surveillance in his home and work and followed at all public places "for life[,]" including

being surveilled of his cell phone, computer, texts, emails, and in person. *Id.* ¶¶ 9, 14. He alleges that the FBI is in violation of his civil and constitutional rights based on this "negligent and discriminatory conduct" and that he was "secretly" sentenced to deprivation of his "whole life" without the chance to defend himself. *Id.* ¶ 9. Plaintiff's complaint appears to allege that he was impermissibly placed on a government "watchlist," *i.e.*, the "FBI's American Domestic 'Terrorist Screening Dataset'" based on his mental health issues including his belief that "[h]e thinks he is a Navy SEAL[.]" *Id.* ¶ 12. He alleges that there is a "loophole" in the system because if he is on these watchlists, then he is "automatically a National Security Threat" even though there is no probable cause. *Id.* He asserts that warrants obtained for this surveillance are facially deficient and unlawful with false information and that the FBI "covertly administers mind-altering substances" that impairs his ability to function. *Id.* ¶ 14.

He asserts the "circumstances of this case have deprived [him]" of various constitutional rights, including the rights to be presumed innocent, to equal protection, to freedom from government discrimination, privacy, and other claimed rights. *Id.* ¶¶ 18-20. He asserts that equitable relief is necessary to stop "this illegal surveillance because the FBI intention is to have [him] under surveillance 'for life.'" *Id.* ¶ 23. He alleges that the FBI mandates that he be drugged in order to minimize and neutralize him as a threat because he "used to work out a lot and enjoy health and fitness, and kept getting stronger … over the years [and] [] have been seen as a huge threat than just mentally disabled." *Id.* ¶ 26.

He alleges that in 2019 on the island of St. Croix, the FBI wanted him to leave the island because it is a small community and for the safety of the people and the FBI administered testosterone and other substances causing him to overdose for many months, leading to mental and physical pain. *Id.* ¶ 29. He alleges that later in November 2019, he ran away to Canada to visit his brother and was interrogated by various investigative units of the federal government when he arrived. *Id.* He further alleges that the Canadian Security and Intelligence Service insisted he was dangerous without probable cause. *Id.* Plaintiff's complaint proceeds to repeat several of his allegations including of being misinterpreted as "crazy" because "he thinks he is a Navy SEAL" and of the FBI's surveillance of him. *See id.* ¶¶ 34-35.

In his claim for violation of the FTCA, he asserts that his allegations "constitute negligent and wrongful acts and omissions of agents and employees" of the federal government including "false accusations, … negligent tort, retaliation, discrimination, civil rights violation," and a number of other violations. *Id.* ¶ 38. He asserts that the "intentional infliction of … psychological torture and mental suffering" based on "the administration or application of mind-altering substances or other procedures calculated to disrupt profoundly the senses or the personality" are "circumstances where the defendant United States, if a private person, would be liable to the Plaintiff[.]" *Id.*

Plaintiff asserts he has suffered damages and alleges an extensive list of injuries, including physical, mental, emotional, and financial injuries. *See id.* ¶ 39(a)-(m); *see also id.* ¶¶ 40-46. For example, Plaintiff alleges he has been tortured by "effects calculated by the FBI to impair [his] brain and body" causing him various physical issues including "extreme bloating and uncontrollable weight gain" and sexual dysfunction, insomnia, and other issues. *See id.* ¶ 40. He alleges that since "overdosing in 2019, every day for many years now and until present day, [he has] testicular pain from the FBI administration of these substances containing variations of testosterones." *Id.* ¶ 43. He alleges the FBI puts these substances in his food, prescription pills, sprays it on his bed, towels, and other personal toiletries, belongings, and food items and "watches" him shower and "knows" if he is "eating the food, sleeping in [his] bed, [etc.]" *Id.* ¶ 44. He alleges that "[a]s a direct result of the actions of the government, [he has] been greatly distressed, humiliated, and embarrassed" and has "sustained intense and severe mental suffering and distress[.]" *Id.* ¶ 45. He asserts a cause of action for privacy and the tort of invasion of privacy which "allows [him] to recover damages for [] deprivation of [his] solitude and seclusion and [] that [his] private life is publicly given, allowing recovery for the harm resulting to [his] reputation from the publicity" and to recover damages "for the harm to [his] reputation from the position in which [he is] placed" and damages for emotional distress and humiliation. *Id.* ¶ 46.

In his prayer for relief, Plaintiff seeks the following: damages in the amount of $500 million dollars; injunctive relief to have him "removed from all domestic and international watchlists … to prevent this surveillance from following [him] domestically and internationally when [he] decide[s]

to travel abroad"; to quash and traverse the warrants against him as constitutionally void and for the "fruits of the poisonous tree" evidence to be destroyed "as though [he] was never under surveillance"; and the costs of the action. *Id.* ¶ 47. The complaint is signed and dated October 2, 2024. *Id.* at 25. Plaintiff attaches to the complaint a form titled "Claim for Damage, Injury, or Death" purporting to bear his signature and a letter from the U.S. Department of Justice ("DOJ") dated September 9, 2024, indicating that the FBI has denied his claim for personal injury for a sum certain amount of $500 million dollars. *Id.* at 26.

## II.     Governing Authority

"A preliminary injunction [or TRO] is an extraordinary remedy never awarded as of right."[4] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). The purpose of a TRO is to preserve the status quo pending a fuller hearing. *See* Fed. R. Civ. P. 65.

A federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party must appear to defend"). The court may not attempt to determine the rights of persons not before it. *See*, *e.g*., *Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-35 (1916); *Zepeda v. INS*, 753 F.2d 719, 727-28 (9th Cir. 1983). Under Federal Rule of Civil Procedure 65(d)(2), an injunction binds only "the parties to the action," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation." Fed. R. Civ. P. 65(d)(2)(A)-(C). "When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr*., 810 F.3d 631, 633 (9th Cir. 2015).

---

[4] "The legal standards applicable to TROs and preliminary injunctions are substantially identical." *Babaria v. Blinken*, 87 F.4th 963, 976 (9th Cir. 2023) (quotations and citations omitted).

6

"A plaintiff seeking a preliminary injunction [or TRO] must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 576 U.S. 863, 876 (2015) (quoting *Winter*, 555 U.S. at 20). "Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Because the first factor "is a threshold inquiry and is the most important factor," a "court need not consider the other factors" if a movant fails to show a likelihood of success on the merits. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal quotation marks and citations omitted); *see*, *e.g.*, *Babaria*, 87 F.4th at 980 ("We need not consider the remaining *Winter* factors because plaintiffs fail to show a likelihood of success on the merits.").

### III. Discussion

#### A. Plaintiff's Motion

In Plaintiff's motion for temporary restraining order, he seeks to require Defendant FBI cease all operations, including any surveillance and "drugging operations" towards him without lawful probable cause and a warrant for an indefinite period. (Doc. 12 at 1). Plaintiff's assertions in his TRO application largely mirror the same largely incoherent and conclusory allegations as pleaded in his complaint, including unspecified assertions of being tortured and surveilled by the FBI in violation of his constitutional rights. *See id.*; *see generally* (Doc. 1). He asserts his motion is based upon the "Convention Against Torture" which he purports "clearly states [he has] the right to complain and not be retaliated upon." (Doc. 12 at 3). He asserts that, pursuant to an unspecified court case entitled "*United States v. US District Court*," the Court is required to mandate his TRO. *Id.* He seeks the Court waive the requirement to give notice to Defendants of his motion for TRO because "the FBI already knows" of the filing and that Defendants' "agents are literally watching me make this [m]otion." *Id.* at 3-4. Plaintiff proceeds to assert a chronology of events regarding conflicting, indecipherable findings of various Canadian-based law enforcement entities before expounding upon his claims of being "drugged" with nerve agents, "tortured for life," surveilled,

7

and on whether he truly believes that he is "a Navy SEAL." *See id.* at 4-39.  He asserts that he is requesting a TRO because he "need[s] it from these crazy people." *Id.* at 39.

In the "Argument" section of his motion, Plaintiff asserts that the Court must grant a TRO based on the "Convention Against Torture, 1984[,] Article #2" to protect him from the FBI's torture, punishment, crimes against humanity, and experimentation against him. *Id.* at 49.  He asserts that he is likely to succeed on the merits and the public interest factor weighs in favor of his TRO for two reasons, including because "[t]his whole case is disgusting" as evident from his variety of allegations and because "[t]his whole case is demeaning to the American Human Rights Reputation" as he "was literally a mental slave to the FBI for a full 23,280 hours." *Id.* at 50 (emphasis removed).  Plaintiff asserts good cause exists to grant him early discovery as he requires information to be able to move for a preliminary injunction. *Id.* at 51.  Plaintiff concludes his motion by listing various international treaties and conventions and state and federal statutes upon which his claims rely. *Id.* at 52-58.  The motion is signed and dated on November 18, 2024. *Id.* at 59.

**B.      Analysis**

Plaintiff fails to establish the requisite factors to succeed on his request for a TRO and for a preliminary injunction.  The undersigned finds Plaintiff is not likely to succeed on the merits of his claims given the Court has dismissed his complaint with leave to amend, and Plaintiff has not shown he is likely to suffer immediate and irreparable harm in the absence of preliminary injunctive relief.  *See* (Doc. 39).  Indeed, Plaintiff is not entitled to emergency relief because he has not yet filed a viable amended complaint in this matter.  *See Simmons v. Alston*, No. 2:23-CV-01076-LK, 2023 WL 4704745, at *2 (W.D. Wash. July 24, 2023) ("[T]he Court cannot address a motion premised on a nonexistent complaint with nonexistent claims for relief."); *Frick v. Dy*, No. C22-801-JHC-MLP, 2022 WL 4348567, at *1 (W.D. Wash. Aug. 23, 2022), *report and recommendation adopted*, 2022 WL 4315689 (W.D. Wash. Sept. 19, 2022); *e.g., Williams v. Duffy*, No. 18-cv-06921-BLF, 2019 WL 95924, at *3 (N.D. Cal. Jan. 3, 2019) ("In light of the Court's determination that Plaintiff's complaint fails to state a claim, he cannot establish that he is likely to succeed or that there are serious questions going to the merits of his claims. Having reached this conclusion,

the Court need not reach the remainder of the *Winter* factors.") (citing *Pimentel v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012)); *Canero v. EMC Mortg. Corp.*, No. C 09–4696 JF (HRL), 2010 WL 1135979, at *3 (N.D. Cal. Mar. 22, 2010) (denying application for TRO and dismissing complaint with leave to amend where the "complaint fails to provide a clear recitation of the events giving rise to the instant lawsuit and fails to set forth sufficient facts regarding each defendant's role in the subject transaction.").

Because the Court's order granting Defendants' motion to dismiss (Doc. 39) found that Plaintiff's claims under the FTCA are barred for lack of subject matter jurisdiction insofar as Plaintiff asserts constitutional tort violations under the FTCA and assert the claim against the FBI—claims for which the United States and the FBI both are immune under the doctrine of sovereign immunity—and that Plaintiff otherwise failed to state a claim for his remaining causes of action, there is no likelihood of success such that the Court is necessarily may not to grant Plaintiff's motions for TRO. *See, e.g.*, *Church of Scientology of Cal. v. United States*, 920 F.2d 1481, 1491 (9th Cir. 1990) (upholding denial of injunctive relief that was based on lack of subject matter jurisdiction as plaintiff failed to demonstrate "that under no circumstances could the Government prevail" and "has failed to establish that it will suffer irreparable harm unless an injunction is issued."); *Hookano v. Capitol One Auto Fin. Inc.*, No. 2:09–3282 MCE GGH, 2009 WL 4510123, at *1 (E.D. Cal. Nov. 25, 2009) (denying TRO motion where court lacked subject matter jurisdiction).

Aside from being unable to show a likelihood of prevailing on the merits, Plaintiff fails to establish that he is likely to suffer immediate and irreparable harm in the absence of preliminary injunctive relief. *Glossip*, 576 U.S. at 876. His conclusory assertion that Defendants' actions put him "in danger of immediate, irreparable harm … guarantees that the FBI will continue to retaliate upon [him]" is unsupported by sufficient factual detail as to what and how he is being retaliated against and what specific harm he faces absent the relief he seeks. Additionally, the Court notes that Plaintiff filed his application for TRO approximately seven weeks after he filed his complaint, a "long delay [which] implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985). Because Plaintiff fails to plead or

show he is likely to suffer immediate and irreparable injury other than general and conclusory allegations that he is being "drugged" and "surveilled for life," Plaintiff's TRO fails on this factor. *Mazurek v. Armstrong*, 529 U.S. 968, 972 (1997) (The likely harm must be supported by a "clear showing."). Indeed, Plaintiff's claims to being irreparably harmed absent the Court's grant of emergency, injunctive relief are undermined by his most recent representations that he seeks to put "a hold on this case until further notice" and that he "will continue this lawsuit another time." *See* (Doc. 35 at 1-2)

*     *     *     *     *

In sum, as Plaintiff is unlikely to succeed on the merits of his non-cognizable claims over which this Court has found it lacks subject matter jurisdiction and Plaintiff fails to persuasively show a likelihood of irreparable harm in the absence of relief, the Court finds no basis to issue the extraordinary remedy of a temporary restraining order or a preliminary injunction. *Winter*, 555 U.S. at 20, 24; *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion'"). Accordingly, Plaintiff's motions for temporary restraining order (Docs. 12, 16) will be dined.

### IV. Conclusion and Order

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's motions for temporary restraining order (Docs. 12, 16) are DENIED.

IT IS SO ORDERED.

Dated: **October 14, 2025**

_____
UNITED STATES MAGISTRATE JUDGE